```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
                                  :
JOSEPH ROBINSON, JR.
                                  :
     v.                           : Civil Action No. DKC 2005-1333
                                  :
JOHN E. POTTER
                                  :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is: (a) the motion of Defendant John E. Potter, Postmaster General of the United States Postal Service ("USPS") to dismiss or, in the alternative, for summary judgment (paper 17); and (b) the request of Plaintiff Joseph Robinson, Jr., to stay the court's decision pending discovery. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court will grant Defendant's motion and will deny Plaintiff's request to stay the court's decision.

**I.   Background**

The following facts are either undisputed or viewed in the light most favorable to Plaintiff. Plaintiff began working for the USPS in December 1994. On or about February 26, 1996, during the course of his employment, Plaintiff injured his back. As a result, Plaintiff was assigned a "permanent disability rating" and placed temporarily on workman's compensation. In or around March 1997, Plaintiff's physician released him for limited duty work, subject

to the restriction that he could not engage in heavy or repetitive lifting and the requirement that he have regular access to an ergonomic chair. In or around August 1997, Plaintiff began working for the USPS in a non-funded position as a Mail Handler at the PS-04 level in the Small Parcels Bulk Section ("SPBS") at the Southern Maryland Bulk Mail Center in Capitol Heights, Maryland (the "Capitol Heights Center"). Plaintiff worked in this position for the next eighteen months, without incident. Plaintiff states that, while in this position, his supervisor made every attempt to accommodate his back injury. Around February 1999, Plaintiff transferred to a funded position as a Mail Handler at the PS-04 level in the Re-Wrap cage at the Capitol Heights Center. Plaintiff again was able to satisfy the requirements of this position, as modified to accommodate his injury.

In December 1999, Plaintiff was hired into the same job he previously held in the SPBS at the Capitol Heights Center. Plaintiff maintains that, on or about January 23, 2000, despite having been made aware of Plaintiff's limitations, his supervisor assigned him to a work detail that Plaintiff did not feel that he could perform safely. When Plaintiff objected to the assignment, his supervisor ignored the objections and refused to allow Plaintiff to meet with his union representative to discuss the

issue.[1]  That day, Plaintiff re-injured his back and, as a result, was unable to work for several months.  In or around May 2000, Plaintiff's doctor cleared him to return to work with the USPS, subject to the same restrictions as had previously been set forth by his physician (i.e, lifting restrictions, access to ergonomic chair).  Plaintiff maintains that the USPS failed to offer Plaintiff his former position or any other position, and that the USPS told Plaintiff that it does not have any positions for which Plaintiff is qualified, due to his back condition.

On or about February 9, 2000, Plaintiff contacted the USPS's Equal Employment Opportunity office concerning his allegations that the USPS was discriminating against him because of a disability.  On February 16, 2001, Plaintiff filed a formal complaint of discrimination with the USPS, alleging that he was discriminated against on the basis of a disability, in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 *et seq*.[2]  On July 5, 2002, the USPS issued a final decision denying Plaintiff's claim.  Plaintiff timely filed an appeal to the Equal

---

[1] In the complaint, Plaintiff states "*plaintiff* ignored these objections and refused to allow plaintiff to meet with his Union representative to discuss the dispute." (Paper 1, at 2) (emphasis added).  The context of the statement suggests that Plaintiff's initial self-reference was made in error, and that Plaintiff actually intended to refer to his supervisor.

[2] It is not entirely clear what transpired during the period between Plaintiff's initial contact with the EEO office and when he filed a formal complaint.

3

Employment Opportunity Commission ("EEOC"), Office of Federal Operations.  On December 4, 2003, the EEOC issued an opinion, affirming the final decision of the USPS and denying Plaintiff's claim.  The EEOC advised Plaintiff of his right to file a civil action in federal court within 90 calendar dates from the date of the receipt of the decision, or to file a request for reconsideration within 30 calendar days of receipt of the decision.  The decision provided: "All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036."  (Paper 17, Eley decl., ex. 7 at 5).

Plaintiff asserts that, on January 8, 2004, he called the EEOC to determine where he could hand-deliver his request for reconsideration, and was told that he could take the request to a building located on the 1400 block of L Street, N.W., in Washington, D.C.  Plaintiff hand-delivered his request for reconsideration to that address the same day.  On February 17, 2004, the EEOC sent Plaintiff a letter noting that his motion for reconsideration had "been docketed."  (Paper 17, Eley decl., ex. 8).  On February 23, 2004, the EEOC denied Plaintiff's request for reconsideration as untimely.  (Paper 17, Eley decl., ex. 9).  The EEOC stated that the initial decision was issued on December 4, 2003, and that, "unless evidence to the contrary is presented," the EEOC presumes that Plaintiff received the decision within five

calendar days after it was mailed. *Id*. After taking this five-day time period into account, the 30-day period for submitting a reconsideration request ended on January 8, 2004. The EEOC noted that despite its earlier instruction that a request for reconsideration be filed with the Director of the Office of Federal Operations, Plaintiff appeared to have filed his request with the EEOC's Washington Field Office on January 8, 2004. The EEOC noted that the Office of Federal Operations did not receive the request until February 9, 2004 and that, because the 30-day time limit expired on January 8, 2004, the request was untimely and therefore it was denied. The EEOC stated that the December 4, 2003, decision "remains the final decision." *Id*. The EEOC's reconsideration denial also included a paragraph noting Plaintiff's right to file a civil action, which stated: "The decision of the [EEOC] is final, and there is no further right of administrative appeal from the [EEOC's] decision. You have a right to file a civil action in an appropriate United States District Court *within ninety (90) calendar days from the date that you receive this decision*." *Id*. (emphasis added).

On June 1, 2004, Plaintiff filed a civil action in the United States District Court for the District of Columbia, alleging that Defendant violated the Rehabilitation Act. (Paper 1). In the complaint, Plaintiff seeks: an Order enjoining Defendant from engaging in further violations of the Rehabilitation Act and

5

requiring Defendant to hire Plaintiff into a position of equal pay to the position that Plaintiff would have occupied had Defendant permitted him to return to work in May 2000; back pay and lost benefits to which Plaintiff would have been entitled; damages for mental anguish; attorneys' fees and costs; and other relief the court deems just. On May 2, 2005, the court granted Defendant's motion to transfer the case for improper venue (paper 12) and the case was transferred to the United States District Court for the District of Maryland on May 16, 2005.[3]

On August 31, 2005, Defendant filed a motion to dismiss or for summary judgment (paper 17). In its motion, Defendant asserts that Plaintiff's complaint was untimely and fails to state a claim of discrimination. Defendant asserts that Plaintiff's suit is untimely because it was filed outside of the 90-day period provided for in 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407(c), arguing first that the initial decision of December 4, 2003 is the triggering event and this suit was filed well more than 90 days later. Alternatively, Defendant argues that the complaint was filed more than 90 days after the denial of reconsideration was received. Plaintiff, on the other hand, argues that the February 23, 2004, denial of reconsideration is the triggering event and that, when properly calculated by excluding certain weekend days

---

[3] On September 13, 2004, Defendant filed a motion to dismiss, or in the alternative to transfer for improper venue.

and a holiday, the complaint was filed within the 90-day period. As will be explained, the proper triggering event for the 90-day period is the February 23, 2004 decision. Plaintiff is incorrect, however, in counting the 90-day period and this case will be dismissed due to the untimely filing.

**II. Standard of Review**

It is today clear that a failure to file within 90 days of receiving the right-to-sue letter is not an issue of subject matter jurisdiction and therefore Defendant's motion is not governed by Fed.R.Civ.P. 12(b)(1). The Supreme Court held in *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990), that the time period for filing a civil suit after receiving a right-to-sue letter, whether against the federal government or a private employer, is subject to waiver and equitable tolling and thus, is not jurisdictional. *See also Arbaugh v. Y&H Corp.*, 126 S.Ct. 1235, 1242 (2006) (noting that "in recent decisions, [the Court has] clarified that time prescriptions, however emphatic," are not jurisdictional); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (holding that Title VII's timely filing requirements are not jurisdictional); *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006) ("The [defendant's] argument that [the plaintiff's] religious discrimination claim was untimely is not an argument challenging the district court's subject-matter jurisdiction to

7

hear the claim."). Thus, the proper analysis for Plaintiff's claim is under either Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. 56(c).

Defendant has moved to dismiss Plaintiff's claim or alternatively, for summary judgment.  A court considers only the pleadings when deciding a Rule 12(b)(6) motion.  Where the parties present matters outside of the pleadings and the court considers those matters, as it does here, the court will treat the motion as one for summary judgment.[4]  *See Gadsby by Gadsby v. Grasmick*, 109 F.3d. 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

It is well established that a motion for summary judgment will be granted only if: (a) there exists no genuine issue as to any material fact and (b) the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that these two conditions are met.  *See* Fed.R.Civ.P. 56(c);

---

[4] The court will consider the February 17, 2004, correspondence from the EEOC, (paper 17, Eley decl., ex. 8).  This was neither attached to nor referenced in Plaintiff's complaint.  Defendant's motion therefore is treated properly as a motion for summary judgment.  Accordingly, the court need not consider Plaintiff's assertion that, pursuant to Fed.R.Civ.P. 12(g), Defendant is prohibited from filing a Rule 12(b)(6) motion to dismiss because Defendant failed to consolidate the defense with Defendant's earlier motion to dismiss or to transfer for improper venue.

8

*Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997).

**III. Analysis**

Pursuant to 29 U.S.C. § 794a(a)(1), "[t]he remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. [§] 2000e-16), including the application of sections 706(f) through 706(k) (42 U.S.C. [§] 2000e-5(f) through (k))" are applicable to Rehabilitation Act claims. Title 42, § 2000e-16(c) provides that federal sector employees may file suit

9

within 90 days of receiving notice of a final agency decision or an EEOC decision:

> Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination . . . an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

*Id*. *See also* 29 C.F.R. 1614.407(c) (stating that a complainant pursuing a Rehabilitation Act claim may file a civil action "[w]ithin 90 days of receipt of the [EEOC's] final decision on an appeal").

The parties dispute what EEOC action was the "final action" for purposes of triggering the 90-day period. Defendant asserts that the December 3, 2003, EEOC decision was the final action taken by the EEOC and thus should constitute the trigger for the filing period. Therefore, Plaintiff was required to file his civil action in March 2004, which he did not do. Defendant claims that Plaintiff's filing, on June 1, 2004, was 86 days beyond the 90-day limit. Defendant reasons that Plaintiff's untimely reconsideration request did not defeat the finality of the EEOC's December 2003 decision, because the EEOC never *actually* reconsidered the case.

10

In support, Defendant cites 29 C.F.R. § 1614.405(b), which states: "A decision issued under paragraph (a) of this section [(i.e., a decision on an appeal from an agency's final action)] is final within the meaning of § 1614.407 unless the [EEOC] reconsiders the case."  Defendant thus maintains that the December 2004 decision remained the "final decision" from which the 90-day period properly is calculated.  Nevertheless, Defendant asserts that even if the EEOC's February 23, 2004, denial of Plaintiff's reconsideration request is considered the final EEOC action for purposes of calculating the 90-day period, Plaintiff's complaint still was untimely.

Plaintiff relies on the February 23, 2004, EEOC denial of his reconsideration request as the trigger for the 90-day period.  Plaintiff describes what he asserts is the proper calculation of time:

> [T]he February 23 letter denying the motion for reconsideration is presumed to have been received by [P]laintiff through counsel five days thereafter, on February 28, 2004.
> However, because the date of February 28, 2004, date [sic] fell upon a Saturday, the official date of receipt is presumed to have been Monday, March 1, 2004.  The 90th day after March 1, 2004, was May 30, 2004.  However, that date was a Sunday and the next date, May 31, 2004, was a federal holiday.  Hence the complaint was not required to be filed until Tuesday, June 1, 2004, when the complaint was indeed filed.

(Paper 18, at 9-10).

11

As will be explained, the proper triggering event for the 90-day period is the February 23, 2004 decision. The relevant regulation, 29 C.F.R. § 1614.405(b) states that: "A decision issued under paragraph (a) of this section is final within the meaning of § 1614.407 *unless the [EEOC] reconsiders the case*" (emphasis added). Plaintiff filed a motion for reconsideration on January 8, 2004, albeit with the incorrect office of the EEOC. On February 17, 2004, the EEOC sent Plaintiff a letter indicating that his reconsideration motion "was docketed." The letter did not provide any information about Plaintiff's right to file a civil suit or the time period for doing so, or indicate that Plaintiff's request was untimely. On February 23, 2004, the EEOC denied Plaintiff's motion for reconsideration as untimely. Although the EEOC noted that the December 3, 2003, decision remained the "final decision," it also stated that Plaintiff had 90 days from "this decision" (i.e., the denial of reconsideration) in which to file a civil claim.

Defendant's argument that 29 C.F.R. § 1614.405(b) *requires* that the EEOC conduct an "actual," merits-based inquiry with regard to a reconsideration request in order to trigger a new, 90-day filing period, and that a denial of reconsideration based on an untimely request is not sufficient, is not particularly persuasive. At best, the regulation is ambiguous. However, even assuming the regulation requires the EEOC's reconsideration decision to be based on a merits-based inquiry in order to trigger the 90-day period,

12

the court would find sufficient reason to toll the filing period in that initial period. *See Irwin*, 498 U.S. at 95-96 (noting that the 90-day time period for filing a civil suit may be subject to waiver and equitable tolling in limited circumstances); *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 654 (4th Cir. 1987) ("[D]istrict courts should conduct a thorough examination of the facts to determine if reasonable grounds exist for an equitable tolling of the filing period.").

The February 17, 2004, communication from the EEOC stated that Plaintiff's reconsideration request had been docketed. The letter did not state that the request was untimely, or that, should the request be found to be untimely, the 90-day filing period would expire in March 2004. More importantly, the EEOC stated in its February 23, 2004, letter that Plaintiff had 90 days from the date of that letter to file a civil claim. This allegedly incorrect notice is a sufficient reason to toll the filing the period. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (suggesting that inadequate notice from the EEOC may provide a basis for equitable tolling of the statutory period); *Garner v. E.I. Du Pont de Nemours & Co.*, 538 F.2d 611, 613-15 (4th Cir. 1976) (finding that insufficient notice tolls the statutory time limit for filing a claim); *Browning v. AT&T Paradyne*, 120 F.3d 222, 226-27 (11th Cir. 1997)(tolling the limitations period where the EEOC failed to provide notice of the plaintiff's right to sue and where

13

the EEOC investigator mistakenly advised the plaintiff's attorney of the wrong statute of limitations); *Gates v. Georgia-Pacific Corp.*, 492 F.2d 292, 295 (9th Cir. 1974) (holding that the limitations period should be tolled where the EEOC letter informed the plaintiff that it was closing her case but did not inform her of her right to sue or of the time period for doing so); *Page v. U.S. Indus., Inc.*, 556 F.2d 346, 351 (5th Cir. 1977) (tolling the 90-day period where the EEOC's initial communication was ambiguous and confusing), *cert. denied*, 434 U.S. 1045 (1978); *Bush v. Quebecor Printing (USA) Corp.*, 130 F.Supp.2d 301, 305-06 (D.Mass. 2001) (discussing cases). Accordingly, the court will rely on the February 23, 2004, decision for purposes of calculating the 90-day filing period.

Nevertheless, Plaintiff's claim still is untimely. Although Plaintiff does not provide the date that he actually received the denial of reconsideration letter, the EEOC sent the letter on February 23, 2004. The presumption is that Plaintiff received the letter within three days. *See Baldwin County Welcome Ctr.*, 466 U.S. at 148 n.1 (noting that pursuant to Fed.R.Civ.P. 6(e), the presumed date of receipt is three days after the right-to-sue letter is mailed); *Nguyen v. Inova Alexandria Hosp.*, 187 F.3d 630 (4th Cir. 1999) (unpublished opinion), *cert. denied*, 528 U.S. 1188

14

(2000) (adopting Fed.R.Civ.P. 6(e)'s three-day rule).[5]  Assuming Plaintiff received the letter on February 26, 2004, the 90-day period would have expired prior to June 1, 2004, on May 26, 2004.

Plaintiff, without citing any authority, contends that the EEOC's February 23, 2004, letter was presumed to have been received *five days* after it was sent, on February 28, 2004.  Plaintiff appears to base this presumption on the EEOC's February 23, 2004, letter, which stated that "unless evidence to the contrary is presented," the EEOC presumes that Plaintiff received the [December 3, 2003,] decision within five calendar days after it was mailed. (Paper 17, Eley decl., ex. 8).  As noted, both the Supreme Court and the United States Court of Appeals for the Fourth Circuit, albeit in an unpublished opinion, have adopted the three-day presumption in Fed.R.Civ.P. 6(e).  Even if the court used the five-day presumption, Plaintiff would have received the letter on February 28, 2004, the 90-day period would have ended on May 28, 2004, and Plaintiff's claim still is untimely.

---

[5] Under the Federal Rules of Civil Procedure, the additional days for receipt by mail do not exclude weekends or holidays. *See, e.g., Berman v. Congressional Towers Ltd. P'ship-Section I*, 325 F.Supp.2d 590, 593 (D.Md. 2004)("The additional three days [under Rule 6(e)] are generally considered separately and added to the 10-day time period unaffected by Rule 6(a)'s exclusion of weekends for prescribed time periods under eleven days. *See National Savings Bank v. Jefferson Bank*, 127 F.R.D. 218, 221-22 (S.D.Fla. 1989).")

15

Plaintiff, again without citing any authority, claims that because February 28, 2004, fell on a Saturday,"the official date of receipt is presumed to have been Monday, March 1, 2004." This contention is without merit.  Fed.R.Civ.P. 6(a) describes the proper computation of time:

> The day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday . . . .

*See also* 29 C.F.R. § 1614.604(d) (providing the same computation rule).  Neither the rule nor the regulation states that if the *first* day of the period falls on a Saturday the period does not begin running until the next business day and there is no other authority for calculating the time frame in this manner.

Plaintiff asserts that even if his claim is untimely, that because the February 23, 2004, letter provided that he had 90 days to file suit, he should "receive the benefit of equitable tolling." (Paper 18, at 10).  As noted, the court agrees that, based on the circumstances presented, the February 23, 2004, decision is the proper triggering action.  However, Plaintiff's filing still was untimely, and Plaintiff provides no reason why that time period should be tolled.  The Supreme Court has noted the importance of strict adherence to procedural rules:

> Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out

16

>of a vague sympathy for particular litigants. As we stated in *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980), "[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

*Baldwin County Welcome Ctr.*, 466 U.S. at 152. In *Irwin,* the Supreme Court stated:

>We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

498 U.S. at 96 (footnote omitted). Likewise, the Fourth Circuit also has noted the limited application of the doctrine of equitable tolling:

>Equitable tolling "is appropriate when, but only when, 'extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit.'" *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001) (quoting *Harris* [*v. Hutchinson*], 209 F.3d [325,] 330 [(4th Cir. 2000)]). Accordingly, under our existing "extraordinary circumstances" test, [the petitioner] is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.

*Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc), *cert. denied*, 541 U.S. 905 (2004). Accordingly, Plaintiff's claim was

filed more than 90 days after his presumptive receipt of the EEOC right-to-sue letter, and there are no grounds for tolling the filing period.  A grant of summary judgment to Defendant therefore is proper.  *See Harvey*, 813 F.2d at 653-54 (affirming the district court's grant of summary judgment to the defendant where the plaintiff's discrimination claim was filed one day late); *Roberson v. Bowie State Univ.*, 899 F.Supp. 235, 238-39 (D.Md. 1995) (barring a discrimination claim where the plaintiff filed the suit one day late).

### IV. Plaintiff's Discovery Request

Plaintiff states that "if the Court decides to so exercise its discretion as to treat [D]efendant's second argument [(i.e., that Plaintiff was not a "qualified person with a disability")] as a motion for summary judgment, [P]laintiff ask[s] that he be given an additional 45 days to collect and present information needed to respond fully to [D]efendant's motion for summary judgment." (Paper 18, at 5).  Because the court need not reach the issue of whether Plaintiff was a qualified person with a disability, Plaintiff's request to stay the court's decision pending discovery will be denied as moot.

### V. Conclusion

For the foregoing reasons, Defendant's motion to dismiss or in the alternative, for summary judgment, will be granted.

18

Plaintiff's request to stay the court's decision pending discovery will be denied as moot.  A separate Order will follow.

                                                                        /s/
                                        DEBORAH K. CHASANOW
                                        United States District Judge